**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DERREL RAMSEY | ) | CASE NO. |
| 11065 Riverwind Drive | ) | |
| Powell, Ohio 43065, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| THE COLUMBUS URBAN LEAGUE | ) | |
| 788 Mt. Vernon Avenue | ) | **JURY DEMAND ENDORSED** |
| Columbus, Ohio 43203 | ) | **HEREIN** |
| | ) | |
| -and- | ) | |
| | ) | |
| NATIONAL URBAN LEAGUE, INC. | ) | |
| 80 Pine Street, 9th Floor | ) | |
| New York, New York 10005 | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| ANDREA WILKES | ) | |
| 788 Mt. Vernon Avenue | ) | |
| Columbus, Ohio 43203, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Derrel Ramsey, by and through undersigned counsel, as his Complaint against

Defendant The Columbus Urban League ("CUL"), National Urban League, Inc. ("NUL"), and

Andrea Wilkes, states and avers the following:

**PARTIES, VENUE, & JURISDICTION**

1. Ramsey is a resident of the city of Powell, Delaware County, Ohio.

2. CUL is a domestic corporation for non-profit that does business at 788 Mt. Vernon Avenue,

   Columbus, Franklin County, Ohio 43203 ("Columbus Location").

3. CUL is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*



4. NUL is a foreign corporation for non-profit whose principal place of business is located at 80 Pine Street, 9th Floor, New York, New York 10005.

5. CUL is a local affiliate of NUL.

6. Wilkes is a natural person who is a resident of the state of Ohio.

7. At all times herein, Wilkes was acting directly or indirectly in the interest of CUL in relation to Ramsey.

8. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Ramsey is alleging a Federal Law Claim under the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

9. All material events alleged in this Complaint occurred in Franklin County, Ohio.

10. This Court has supplemental jurisdiction over Ramsey's state law claims pursuant to 28 U.S.C. § 1367 as Ramsey's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## **FACTS**

12. On or about July 17, 2023, Ramsey began working for CUL.

13. CUL employed Ramsey as a business consultant and adviser.

14. Ramsey worked at CUL's Columbus Location.

15. CUL is a non-profit organization whose stated mission is to create opportunity and access for all people through economic, education, and social progress.

16. CUL sponsors career services, entrepreneurship and small business services, youth leadership services, and other programs to promote its mission.

17. Ramsey's job duties included consulting, strategic development, and business coaching.



18. Ramsey is male.

19. During Ramsey's employment, Ramsey was the only male business consultant and adviser.

20. During Ramsey's employment, more than 90% of CUL's employees were female.

21. Wilkes was director of CUL.

22. Wilkes is female.

23. Wilkes was not involved in hiring Ramsey.

24. CUL paid Ramsey at a rate of $60,000 per year.

25. CUL paid similarly-situated female employees at a higher rate than Ramsey.

26. CUL did not decide employees' pay based on a seniority system.

27. CUL did not decide employees' pay based on a merit system.

28. CUL did not decide employees' pay based on measurements of quantity or quality of production.

29. CUL did not decide employees' pay based on any other factor other than sex.

30. CUL paid Heather Landon at a higher rate than Ramsey.

31. Landon is female.

32. Landon worked at CUL's Columbus Location.

33. Landon had the same job duties as Ramsey.

34. Landon had substantially similar job duties to Ramsey.

35. Landon had a similar level of experience to Ramsey.

36. Landon had a similar level of education to Ramsey.

37. CUL paid Cheree Wallace at a higher rate than Ramsey.

38. Wallace is female.

39. Wallace worked at CUL's Columbus Location.



40. Wallace had the same job duties as Ramsey.

41. Wallace had substantially similar job duties to Ramsey.

42. Wallace had a similar level of experience to Ramsey.

43. Wallace had a similar level of education to Ramsey.

44. CUL paid Rosa Torres at a higher rate than Ramsey.

45. Torres is female.

46. Torres worked at CUL's Columbus Location.

47. Torres had the same job duties as Ramsey.

48. Torres had substantially similar job duties to Ramsey.

49. Torres had a similar level of experience to Ramsey.

50. Torres had a similar level of education to Ramsey.

51. On or about November 14, 2023, Wilkes told Ramsey that he was an "undermining man."

52. Wilkes did not point to any particular action by Ramsey that made him an "undermining man."

53. When Wilkes called Ramsey an "undermining man," she meant that men in general are "undermining."

54. Wilkes called Ramsey an "undermining man" because he is male.

55. In or about December 2023, Ramsey raised concerns to Wilkes and human resources director Joy Armstrong ("First Report of Discrimination").

56. In the First Report of Discrimination, Ramsey reported that CUL's programs served only women and ignored the needs of men in the community.

57. In the First Report of Discrimination, Ramsey reported that he was paid less than similarly-situated female employees.



58. In the First Report of Discrimination, Ramsey reported that CUL deprived him of access to projects, mentorship, and promotion opportunities.

59. In the First Report of Discrimination, Ramsey reported that CUL treated him differently from female employees because of sex.

60. CUL has a policy against discrimination ("Discrimination Policy").

61. CUL's Discrimination Policy precludes retaliation against employees who complain about discrimination.

62. Alternatively, retaliation against employees who complain about discrimination is permitted by CUL.

63. CUL's Discrimination Policy precludes intimidation against employees who complain about discrimination.

64. Alternatively, intimidation against employees who complain about discrimination is permitted by CUL.

65. CUL's Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

66. CUL's Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

67. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by CUL.

68. CUL's Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

69. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by CUL.



70. CUL has a policy to investigate reports of violations of its Discrimination Policy.

71. An investigation should include interviewing the complainant.

72. An investigation should include interviewing the subject of the complaint.

73. An investigation should include interviewing the subject of the reported discrimination.

74. An investigation should include interviewing witnesses to the reported discrimination.

75. An investigation should include getting a written statement from the complainant.

76. An investigation should include getting a written statement from the subject of the complaint.

77. An investigation should include getting a written statement from the subject of the reported discrimination.

78. In response to Ramsey's Report of Discrimination, CUL did not interview Ramsey.

79. In response to Ramsey's Report of Discrimination, CUL did not interview Wilkes.

80. In response to Ramsey's Report of Discrimination, CUL did not interview witnesses.

81. In response to Ramsey's Report of Discrimination, CUL did not get a written statement from Ramsey.

82. In response to Ramsey's Report of Discrimination, CUL did not get a written statement from Wilkes.

83. In response to Ramsey's Report of Discrimination, CUL did not get a written statement from witnesses.

84. CUL did not investigate Ramsey's Report of Discrimination.

85. In response to Ramsey's Report of Discrimination, Wilkes accused Ramsey of "slandering women."

86. After Ramsey's Report of Discrimination, Defendants' treatment of him did not improve.



87. In or about early October 2024, Ramsey reported to NUL that CUL and Wilkes were discriminating against him because of sex ("Report to NUL").

88. NUL has a policy against discrimination ("Discrimination Policy").

89. NUL's Discrimination Policy precludes retaliation against employees who complain about discrimination.

90. Alternatively, retaliation against employees who complain about discrimination is permitted by NUL.

91. NUL's Discrimination Policy precludes intimidation against employees who complain about discrimination.

92. Alternatively, intimidation against employees who complain about discrimination is permitted by NUL.

93. NUL's Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

94. NUL's Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

95. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by NUL.

96. NUL's Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

97. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by NUL.

98. NUL has a policy to investigate reports of violations of its Discrimination Policy.

99. An investigation should include interviewing the complainant.



100. An investigation should include interviewing the subject of the complaint.

101. An investigation should include interviewing the subject of the reported discrimination.

102. An investigation should include interviewing witnesses to the reported discrimination.

103. An investigation should include getting a written statement from the complainant.

104. An investigation should include getting a written statement from the subject of the complaint.

105. An investigation should include getting a written statement from the subject of the reported discrimination.

106. In response to Ramsey's Report to NUL, NUL did not interview Ramsey.

107. In response to Ramsey's Report to NUL, NUL did not interview Wilkes.

108. In response to Ramsey's Report to NUL, NUL did not interview witnesses.

109. In response to Ramsey's Report to NUL, NUL did not get a written statement from Ramsey.

110. In response to Ramsey's Report to NUL, NUL did not get a written statement from Wilkes.

111. In response to Ramsey's Report to NUL, NUL did not get a written statement from witnesses.

112. NUL did not investigate Ramsey's Report to NUL.

113. NUL informed CUL about Ramsey's Report to NUL.

114. On or about October 11, 2024, CUL terminated Ramsey's employment ("Termination")

115. Wilkes was involved in the decision to give Ramsey the Termination.

116. On or about October 11, 2024, a representative of CUL's human resources department informed Ramsey about the Termination.

117. On or about October 11, 2024, CUL stated that the reasons for the Termination were a "client complaint" and a "breach of trust" ("Stated Reason").

118. Defendants did not explain what a client allegedly complained about.

119. Defendants did not explain how Ramsey allegedly breached trust.



120. The Stated Reason had no basis in fact.

121. The Stated Reason was not the real reason for the Termination.

122. On or about October 11, 2024, Defendants terminated Ramsey's employment because of sex.

123. On or about October 11, 2024, Defendants terminated Ramsey's employment because he opposed discrimination.

124. After the Termination, Defendants never paid Ramsey his final paycheck.

125. After the Termination, Wilkes falsely accused Ramsey of threatening her with violence.

126. Wilkes published her accusation to third parties.

127. Wilkes's accusations that Ramsey threatened her with violence harmed Ramsey's reputation.

128. Wilkes falsely accused Ramsey of threatening her with violence because of his sex.

129. Wilkes falsely accused Ramsey of threatening her with violence because he opposed discrimination.

130. Wilkes's accusations that Ramsey threatened her with violence would dissuade a reasonable person from opposing discrimination.

131. As a direct and proximate result of CUL's conduct, Ramsey suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT I: PAY DISCRIMINATION BY GENDER, IN VIOLATION OF EPA

**(Defendants CUL and Wilkes)**

127. Ramsey restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

128. CUL employed Plaintiff.

129. Wilkes acted directly or indirectly in the interest of CUL with regard to Plaintiff.



130. EPA states that no covered employer shall discriminate "within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

131. The Columbus Location was an "establishment" within the meaning of EPA.

132. Defendants paid female employees at the same establishment more than Ramsey.

133. Defendants did not pay employees on the basis of a seniority system.

134. Defendants did not use a seniority system to determine employees' starting salaries.

135. Defendants did not pay employees on the basis of a merit system.

136. Defendants did not use a merit system to determine employees' starting salaries.

137. Defendants did not pay employees on the basis of a system which measures earnings by quantity or quality of production.

138. Defendants did not use a system which measures earnings by quantity or quality of production to determine employees' starting salaries.

139. Defendants did not pay employees on the basis of their number of years of experience.

140. Defendants did not use employees' number of years of experience to determine employees' starting salaries.

141. Defendants did not pay employees on the basis of their education.

142. Defendants did not use employees' education to determine employees' starting salaries.

143. Defendants did not pay employees on the basis of any other factor other than sex.



144. Defendants did not use any other factor other than sex to determine employees' starting salaries.

145. Defendants knowingly paid Ramsey less than female employees.

146. Defendants intentionally paid Ramsey less than female employees.

147. Defendants willfully paid Ramsey less than female employees.

148. As a result of Defendants' actions, Ramsey suffered and will continue to suffer damages.

149. Ramsey is entitled to an award of damages, including lost wages, liquidated damages, attorneys' fees, and costs.

## COUNT II: RETALIATION IN VIOLATION OF EPA

### (Defendants CUL and Wilkes)

196. Ramsey restates each and every prior paragraph of this complaint, as if it were fully restated herein.

197. As a result of Defendants' discriminatory conduct described above, Ramsey complained about the discrimination she was experiencing.

198. Subsequent to Ramsey's reporting of discrimination, Defendants gave Ramsey the Termination.

199. Subsequent to Ramsey's reporting of discrimination, Wilkes falsely accused Plaintiff of threatening her with violence.

200. Defendants' actions were retaliatory in nature based on Ramsey's opposition to the unlawful discriminatory conduct.

201. As a direct and proximate result of Defendants' conduct, Ramsey suffered and will continue to suffer damages, including economic and emotional distress damages.



## COUNT III: PAY DISCRIMINATION BY GENDER, IN VIOLATION OF R.C. § 4111.17

### (Defendants CUL and Wilkes)

150. Ramsey restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

151. CUL employed Plaintiff.

152. Wilkes acted directly or indirectly in the interest of CUL with regard to Plaintiff.

153. R.C. § 4111.17 states that no covered employer shall discriminate "in the payment of wages on the basis of race, color, religion, sex, age, national origin, or ancestry by paying wages to any employee at a rate less than the rate at which the employer pays wages to another employee for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar conditions."

154. Defendants paid female employees at the same establishment more than Ramsey.

155. Defendants did not pay employees on the basis of a seniority system.

156. Defendants did not use a seniority system to determine employees' starting salaries.

157. Defendants did not pay employees on the basis of a merit system.

158. Defendants did not use a merit system to determine employees' starting salaries.

159. Defendants did not pay employees on the basis of a system which measures earnings by quantity or quality of production.

160. Defendants did not use a system which measures earnings by quantity or quality of production to determine employees' starting salaries.

161. Defendants did not pay employees on the basis of their number of years of experience.

162. Defendants did not use employees' number of years of experience to determine employees' starting salaries.



163. Defendants did not pay employees on the basis of their education.

164. Defendants did not use employees' education to determine employees' starting salaries.

165. Defendants did not pay employees on the basis of any other factor other than sex.

166. Defendants did not use any other factor other than sex to determine employees' starting salaries.

167. Defendants knowingly paid Ramsey less than female employees.

168. Defendants intentionally paid Ramsey less than female employees.

169. Defendants willfully paid Ramsey less than female employees.

170. As a result of Defendants' actions, Ramsey suffered and will continue to suffer damages.

171. Ramsey is entitled to an award of damages, including lost wages, liquidated damages, attorneys' fees, and costs.

### COUNT IV:  RETALIATION IN VIOLATION OF R.C. § 4111

### (Defendants CUL and Wilkes)

202. Ramsey restates each and every prior paragraph of this complaint, as if it were fully restated herein.

203. As a result of Defendants' discriminatory conduct described above, Ramsey complained about the discrimination she was experiencing.

204. Subsequent to Ramsey's reporting of discrimination, Defendants gave Ramsey the Termination.

205. Subsequent to Ramsey's reporting of discrimination, Wilkes falsely accused Plaintiff of threatening her with violence.

206. Defendants' actions were retaliatory in nature based on Ramsey's opposition to the unlawful discriminatory conduct.



207. As a direct and proximate result of Defendants' conduct, Ramsey suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.02[1]

### (Defendants CUL and Wilkes)

132. Ramsey restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

133. Ramsey is a member of a statutorily protected class based on his gender under R.C. § 4112.02.

134. CUL treated Ramsey differently than other similarly-situated employees based on his gender.

135. CUL discriminated against Ramsey on the basis of his gender throughout his employment with the company.

136. CUL terminated Ramsey's employment without just cause.

137. CUL terminated Ramsey's employment based on his gender.

138. CUL's discrimination against Ramsey based on his gender violates R.C. § 4112.01 *et seq.*

139. As a direct and proximate result of CUL's conduct, Ramsey suffered and will continue to suffer damages, including economic and emotional distress and physical sickness damages.

## COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)[2]

### (All Defendants)

140. Ramsey restates each and every prior paragraph of this complaint, as if it were fully restated herein.

---

[1] Due to the statute of limitations for EPA, Plaintiff is required to file his case before receiving the Right to Sue from the Ohio Civil Rights Commission or Equal Employment Opportunity Commission. Pursuant to R.C. § 4112.052(B)(2)(a), Plaintiff is permitted to file claims under R.C. § 4112.02 if he seeks only injunctive relief. After Plaintiff receives the Right to Sue, R.C. § 4112.052(B)(3) permits him to amend the Complaint to include damages. That is what Plaintiff intends to do in this case.
[2] See Footnote 1.



141. As a result of CUL's discriminatory conduct described above, Ramsey complained about the gender discrimination he was experiencing and witnessing.

142. Subsequent to Ramsey's reporting of discrimination, NUL informed CUL that Ramsey reported discrimination.

143. Subsequent to Ramsey's reporting of discrimination, Defendants terminated his employment.

144. Subsequent to Ramsey's reporting of discrimination, Wilkes falsely accused Plaintiff of threatening her with violence.

145. CUL's actions were retaliatory in nature based on Ramsey's opposition to the unlawful discriminatory conduct.

146. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

147. As a direct and proximate result of Defendants' conduct, Ramsey suffered and will continue to suffer damages, including economic and emotional distress damages.

### <u>COUNT VII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION[3]</u>

### <u>(Defendants NUL and Wilkes)</u>

148. Ramsey restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

149. Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

---

[3] See Footnote 1.



150. NUL and Wilkes aided, abetted, incited, coerced, and/or compelled CUL's discriminatory termination of Ramsey.

151. NUL and Wilkes aided, abetted, incited, coerced, and/or compelled CUL's discriminatory suspension of Ramsey's employment.

152. NUL and Wilkes aided, abetted, incited, coerced, and/or compelled CUL's discriminatory treatment of Ramsey.

153. NUL and Wilkes violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, inciting, compelling, and/or coercing discrimination.

154. As a direct and proximate result of NUL's and Wilkes's conduct, Ramsey has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT VIII: DEFAMATION

### (Defendant Wilkes)

155. Ramsey restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156. After the Termination, Wilkes accused Ramsey of threatening her with violence.

157. Wilkes's accusation that Ramsey threatened her with violence was false.

158. Wilkes published her accusation to third parties.

159. Wilkes knew that her accusation was false.

160. Wilkes was reckless as to the falsity of her accusation.

161. Wilkes was negligent as to the falsity of her accusation.

162. Wilkes's accusation harmed Ramsey's reputation.

16



163. As a direct and proximate result of Wilkes's conduct and the resulting emotional distress, Ramsey has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IX: VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION

### (Defendants CUL and Wilkes)

164. Ramsey restates each and every previous paragraph of this Complaint, as if it were restated herein.

165. In 2024, Ohio's minimum wage was $10.45 per hour.

166. During Ramsey's final pay period, he worked more than 40 hours per week.

167. Defendants paid Ramsey $0 for his final pay period.

168. Defendants paid Ramsey less than minimum wage for the hours he worked in his final pay period.

169. As a result of Defendants' conduct, Defendants are liable for back pay, liquidated damages two times the amount of unpaid wages, attorney's fees, and costs.

## COUNT X: VIOLATION OF FLSA

### (Defendants CUL and Wilkes)

170. Ramsey restates each and every previous paragraph of this Complaint, as if it were restated herein.

171. In 2024, Ohio's minimum wage was $10.45 per hour.

172. During Ramsey's final pay period, he worked more than 40 hours per week.

173. Defendants paid Ramsey $0 for his final pay period.



174. Defendants paid Ramsey less than minimum wage for the hours he worked in his final pay period.

175. As a result of Defendants' conduct, Defendants are liable for back pay, liquidated damages in the amount of unpaid wages, attorney's fees, and costs.

## COUNT XI: CIVIL LIABILITY FOR CRIMINAL ACTS UNDER R.C. § 2307.60

### (Defendants CUL and Wilkes)

176. Ramsey restates each and every previous paragraph of this Complaint, as if it were restated herein.

177. Defendants failed to pay Plaintiff minimum wage for his final pay period.

178. By failing to pay Plaintiff minimum wage, Defendants committed a criminal act under 29 U.S.C. § 216 and R.C. § 4111.19.

179. Defendants discriminated against Plaintiff by paying him less than similarly-situated coworkers based on sex.

180. By paying Plaintiff less than similarly-situated coworkers based on sex, Defendants committed a criminal act under 29 U.S.C. § 216 and R.C. § 4111.19.

181. Pursuant to R.C. § 2307.60(A)(1), "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code."

182. As a direct and proximate result of Defendants' conduct, Ramsey suffered and will continue to suffer damages, including economic and emotional distress damages.

18



## COUNT XII: UNPAID WAGES IN VIOLATION OF R.C. § 4113.15

**(Defendant CUL)**

183. Ramsey restates each and every previous paragraph of this Complaint, as if it were restated herein.

184. During Ramsey's final pay period, he worked more than 40 hours per week.

185. Defendants paid Ramsey $0 for his final pay period.

186. R.C. § 4113.15(A) requires, "Every employer doing business in this state shall, on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month."

187. CUL did not pay Ramsey by November 1, 2024.

188. CUL did not pay Ramsey by November 15, 2024.

189. CUL still has not paid Ramsey for her hours worked for his final pay period.

190. As a result of CUL's conduct, CUL is liable for unpaid wages and liquidated damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Ramsey respectfully requests that this Honorable Court grant the following relief:

**1. For all claims:**

(a) Issue a permanent injunction:

    (i)    Requiring Defendants to abolish discrimination, harassment, and retaliation;

    (ii)    Requiring allocation of significant funding and trained staff to implement all changes within two years;



(iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award of reasonable attorneys' fees and non-taxable costs for Ramsey claims as allowable under law;

(c) An award of the taxable costs of this action; and

(d) An award of such other relief as this Court may deem necessary and proper.

**2. For all claims not arising under R.C. § 4112:**

(a) An award against each Defendant of compensatory and monetary damages to compensate Ramsey for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(b) An award of punitive damages against each Defendant in an amount in excess of $25,000;



Respectfully submitted,

*/s/ Paul Filippelli*
Paul Filippelli (0097085)
Trisha Breedlove (0097085)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax:　 (216) 291-5744
Email: paul.filippelli@spitzlawfirm.com
Email: trisha.breedlove@spitzlawfirm.com
*Attorneys for Plaintiff Derrel Ramsey*

## JURY DEMAND

Plaintiff Ramsey demands a trial by jury by the maximum number of jurors permitted.

*/s/ Paul Filippelli*
Paul Filippelli (0097085)

